The wife appealed from a trial court's ruling in a divorce case awarding custody of the couple's minor daughter to the husband. The husband appealed from an award to the wife of attorney fees in violation of the terms of an ante-nuptial agreement entered into between them. The Court of Civil Appeals upheld the custody award, but reversed the award of attorney fees. 580 So.2d 1350 We affirm as to both issues.
This case arose from the following facts. *Page 1353 
On December 4, 1989, a final judgement of divorce was entered between John Edward Walters ("Edward") and Marita G. Walters ("Rita"). Pursuant to this judgment, custody of the couple's minor daughter was awarded to Edward. In addition, the trial court awarded Rita $10,000 in attorney fees.
In divorce cases, the Alabama Court of Civil Appeals has held that, where evidence is presented ore tenus, a child custody determination is committed to the sound discretion of the trial court, and will not be reversed on appeal absent a finding that the determination is so poorly supported by the evidence as to be plainly and palpably wrong. Sayles v. Sayles, 495 So.2d 1131
(Ala.Civ.App. 1986); Lucero v. Lucero, 485 So.2d 347
(Ala.Civ.App. 1986); and Hester v. Hester, 460 So.2d 1305
(Ala.Civ.App. 1984). This standard recognizes the trial court's unique position to observe the parties and to hear their testimony. Smith v. Smith, 448 So.2d 381 (Ala.Civ.App. 1984). This Court finds that this is a correct statement of the law as it now exists, and that Rita has failed to show that the trial court's ruling was plainly and palpably wrong.
The trial court heard testimony from both the mother and the father concerning the child. In its opinion, the Court of Civil Appeals set out some of the evidence it considered in affirming the judgment of the trial court:
 "The father has a steady job. On the other hand, the mother lost three jobs during the parties' marriage. Evidence was presented that indicated the mother committed adultery during the parties' marriage. Further, one of the experts who testified in the case concluded that the father would provide the more stable environment for the child. In view of this evidence, we cannot say the court erred in granting custody of the child to the father."
In addition, the trial court appointed a licensed clinical psychologist to evaluate the parties; that evaluation supported the custody determination. We conclude that the trial court's custody determination was adequately supported by the record.
We now address Edward's cross-appeal.
Rita asserts that Edward did not properly preserve the issue of attorney fees for review. In support of this contention, she cites us to Walker v. Dutton, 401 So.2d 32 (Ala. 1981). However, we find no merit to this argument. In Walker, we held:
 "Rule 46, ARCP, requires the party adversely affected to apprise the trial court of his objections and the grounds for such objections. C. Gamble, McElroy's Alabama Evidence, § 429.01 (3d ed. 1977). Plaintiffs made no objections to the trial court's rulings; as a consequence, no error was preserved in that regard."
401 So.2d at 32. However, that is not the case here. The record shows that Edward adequately informed the trial court of both his objection to the award of attorney fees and his grounds for that objection.[1]
Approximately one month before Edward and Rita were, married, they entered into an ante-nuptial agreement, which, in pertinent part, provides:
 "6. Each party does hereby WAIVE any rights to alimony, either periodic or gross, support, division of property and claim for attorney fees
from the other party in event of dissolution of the marriage by divorce." (Emphasis added).
The trial court made no specific findings of fact, but the court either found that the ante-nuptial agreement was not properly entered into and, therefore, the court failed to give it effect when it awarded attorney fees to Rita, or the court found that the agreement was valid, but believed that it was within its discretion to award attorney fees outside of this agreement. The rule of appellate review is that a trial court's judgment that is based upon ore tenus evidence is presumed correct and will be reversed only if the judgment is found to *Page 1354 
be plainly and palpably wrong. Furthermore, where the trial court does not make specific findings of fact, it will be assumed that the trial court made those findings that were necessary to support its judgment, unless the findings would be clearly erroneous. Knox Kershaw, Inc. v. Kershaw, 552 So.2d 126
(Ala. 1989).
We first address the validity of the antenuptial agreement.
At the outset, we note that ante-nuptial agreements have been held valid in Alabama. Mixon v. Mixon, 550 So.2d 999
(Ala.Civ.App. 1989); Ruzic v. Ruzic, 549 So.2d 72 (Ala. 1989); Woolwinev. Woolwine, 549 So.2d 512 (Ala.Civ.App. 1989); and Barnhillv. Barnhill, 386 So.2d 749 (Ala.Civ.App. 1980), cert. denied,386 So.2d 752 (Ala. 1980). In determining whether a specific ante-nuptial agreement is valid, the Court of Civil Appeals set out in Barnhill an "either/or" test; we find no error in this approach.
In Barnhill, the Court of Civil Appeals held that the party attempting to rely on an ante-nuptial agreement must show:
 "[1] that the consideration was adequate and that the entire transaction was fair, just and equitable from the other person's point of view, or [2] that the agreement was freely and voluntarily entered into by the other party with competent independent advice and full knowledge of her interest in the estate and its approximate value."
386 So.2d at 751.
We find that there was evidence from which the trial court could have found that the Walters' ante-nuptial agreement was valid under either of these requirements. In Barnhill, the Court of Civil Appeals held that marriage, under appropriate circumstances, may be sufficient consideration for an ante-nuptial agreement. In this case, there was evidence that Edward had told Rita that he would not marry her if she did not sign the antenuptial agreement. Rita had approximately one month to consider the agreement and decide if she wished to sign it. In addition, Rita had lived with Edward for approximately six months before she signed the ante-nuptial agreement. This was sufficient time for her to obtain at least a general opinion as to the extent of Edward's estate. SeeWoolwine and Barnhill.[2]
There is nothing to indicate that the agreement was not fair, just, and equitable from Rita's viewpoint; or that the marriage was not sufficient consideration for the agreement. In addition, Rita had ample time to obtain independent advice if she did not understand the terms of the agreement. Whether she obtained this advice was her choice to make. Further, she had had an opportunity to form an opinion as to the extent of Edward's estate, and what rights she was relinquishing when she signed the agreement. We conclude that the trial court could have found that the ante-nuptial agreement was as a valid and enforceable agreement.
We now address the issue of whether a trial court has the discretion to ignore a provision concerning attorney fees in a valid ante-nuptial agreement.
In McEvoy v. McEvoy, 214 Ala. 112, 106 So. 602 (1925), this Court held that, when the wife entered into a valid pre-nuptial agreement in which she gave up her right to alimony, she effectively gave up her right to an award of attorney fees. However, in Ex parte Cox, 230 Ala. 158, 160 So. 230 (1935), this court upheld a trial court's denial of alimony, as provided for in an ante-nuptial agreement, but where the trial court had also awarded the wife attorney fees. In that case, this Court found that the award was within the trial court's discretion.
Following that case, the Court of Civil Appeals has awarded attorney fees to a wife who has entered into a valid ante-nuptial agreement in which she relinquished her rights to alimony. See Woolwine v. Woolwine, 549 So.2d 512
(Ala.Civ.App. 1989); and Klyce v. Klyce, 429 So.2d 1081 (Ala.Civ.App. 1983). However, in both of these cases, the ante-nuptial agreements *Page 1355 
did not specifically prohibit an award of attorney fees upon divorce. They prohibited alimony, which the trial court did not award.
In Haynes v. Haynes, 360 So.2d 1016 (Ala.Civ.App. 1978), the Court of Civil Appeals held:
 "Alimony is provided for the sustenance of the wife. It stems from the marriage relationship and the common-law right of the wife to support by her husband. . . . We find no precedent for calling an order for payment of the wife's attorney fees alimony, though the allowance of attorney fees to the wife is based upon the same principles as alimony. The statute providing alimony does not provide for the award of fees, but the courts have held that the statutory provision for allowance of maintenance to the wife carries with it the right to award attorney fees. An attorney fee may be awarded though alimony is denied." (Citations omitted.)
We hold that where a provision of a valid ante-nuptial agreement specifically states that attorney fees will be waived in the event of a divorce, a trial court cannot award attorney fees unless it would be inequitable and unjust to enforce that provision. The evidence presented here does not support a finding that enforcement of the attorney fee provision would be inequitable and unjust. Although the rule of review is that when a trial court hears evidence ore tenus and has made no specific finding of fact, we must assume that it made those findings necessary to support its judgment, we fail to find sufficient evidence here that would support a finding necessary to support the trial court's award of attorney fees.
For the foregoing reasons, we affirm the judgment of the Court of Civil Appeals.
AFFIRMED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] The record shows: "(Q.) Do you object to paying her attorney and ask the court not to make you do that? (A.) I most certainly do. (Q.) Please explain the basis for your objection." Edward then proceeded to give a lengthy discourse as to his reasons for objecting to the award of attorney fees.
[2] In Woolwine the court, in support of its judgment, noted that "[a]dditionally, the record indicates that the wife at least had a general knowledge of the extent of the husband's estate." See also Barnhill, 386 So.2d at 752, where a similar finding is made.